# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| DIANA COTTRELL,<br><br>　　　　Plaintiff,<br><br>v.<br><br>EXPERIAN INFORMATION SOLUTIONS, INC; EQUIFAX INFORMATION SERVICES, LLC, TRANS UNION LLC, AND SOURCE RECEIVABLES MANAGEMENT, LLC,<br><br>　　　　Defendants. | **Case No.:** 1:21-cv-2833<br><br>**VERIFIED COMPLAINT AND DEMAND FOR JURY TRIAL**<br><br>1. **FCRA, 15 USC §1681** *et seq.* |

　　　　NOW COMES Plaintiff Diana Cottrell ("Plaintiff") by counsel, alleging violations of the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. § 1681 et seq. against Defendants Experian Information Solutions Inc. ("Experian"), Equifax Information Services, LLC ("Equifax"), Trans Union LLC ("Trans Union"), and Source Receivables Management, LLC ("Source"):

## INTRODUCTION

　　　　1.　　Plaintiff's Complaint alleges violations of the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. § 1681 et seq. against Defendants Experian, Equifax, and Trans Union each a consumer reporting agency, for reporting inaccurate information on Plaintiff's credit reports.

　　　　2.　　Plaintiff's Complaint also alleges violations of the FCRA, against Defendant Source for failing to conduct a reasonable reinvestigation after receiving notice of Plaintiff's dispute from Defendants Experian, Equifax, and Trans Union.

//

## JURISDICTION AND VENUE

3. This Court has federal question jurisdiction because this action arises out of violations of federal law. 28 U.S.C. §§ 1331. Jurisdiction is also proper pursuant to 15 U.S.C. 1681p (FCRA) (permitting actions to enforce liability in an appropriate United States District Court).

4. Venue in the Northern District of Illinois is proper pursuant to 28 U.S.C. § 1391 because Defendants regularly transacts business within this District, is otherwise subject to personal jurisdiction in this District, and a substantial part of the events giving rise to the claims occurred in this District.

## PARTIES

5. Plaintiff Diana Cottrell is a natural person residing in the city of Chicago in Cook County, Illinois.

6. Plaintiff is a *consumer* as defined by the FCRA, 15 U.S.C. §1681a(c).

7. Defendant Experian is a *credit reporting agency*, as defined in 15 U.S.C. § 1681a(f)). Upon information and belief, Experian is regularly engaged in the business of assembling, evaluating, and disbursing information concerning consumers for the purpose of furnishing *consumer report*s, as defined in 15 USC 1681a(d), to third parties. Experian's principal place of business is located at 475 Anton Boulevard, Costa Mesa, California 92626.

8. Defendant Equifax is a *consumer reporting agency*, as defined in 15 U.S.C. § 1681a(f). Upon information and belief, Equifax is regularly engaged in the business of assembling, evaluating, and disbursing information concerning consumers in the form of *consumer reports*, as defined in 15 U.S.C. § 1681a(d)), to third parties. Equifax's principal place of business is located at 1550 Peachtree Street NW, Atlanta, GA 30309. Equifax can be served

through their registered agent, Corporation Service Company, located at 40 Technology Parkway South, #300, Norcross, GA 30092.

9. Defendant Trans Union is a *consumer reporting agency*, as defined in 15 U.S.C. § 1681a(f). Upon information and belief, Trans Union is regularly engaged in the business of assembling, evaluating, and disbursing information concerning consumers in the form of *consumer reports*, as defined in 15 U.S.C. § 1681a(d)), to third parties. Trans Union's principal place of business is located at 555 West Adams, Chicago, Illinois 60661. Trans Union can be served through their registered agent, Prentice Hall Corporation, located at 801 Adlai Stevenson Drive, Springfield, IL 62703.

10. Defendant Source is a third-party debt collector engaged in the business of collecting debt. Source is also a furnisher, as defined in 15 U.S.C. § 1681s-2. Upon information and belief, Source is regularly engaged in the business of furnishing credit information to the credit reporting agencies. Source's principal place of business is located at 4615 Dundas Drive, Suite 102, Greensboro, NC 27407.

11. Upon information and belief, Defendants Experian, Equifax, TransUnion, (referenced together as "credit reporting agencies" or "CRAs") disburse consumer reports to third parties under contract for monetary compensation.

12. At all relevant times, Defendants Experian, Equifax, Trans Union, and Source acted through duly authorized agents, employees, officers, members, directors, heirs, successors, assigns, principals, trustees, sureties, subrogees, representatives, and insurers.

13. Any violation by Defendants was not in good faith, was knowing, negligent, willful, and/or intentional, and Defendants did not maintain procedures reasonably adapted to avoid any such violation.

**FACTUAL ALLEGATIONS**

14. Defendants Experian, Equifax, and Trans Union report consumer information about Plaintiff and other consumers through the sale of consumer reports (credit reports).

15. Defendants Experian, Equifax, and Trans Union credit reports generally contain the following information: (i) *Header/Identifying Information*: this section generally includes the consumer's name, current and prior addresses, date of birth, and phone numbers; (ii) *Tradeline Information*: this section pertains to consumer credit history, and includes the type of credit account, credit limit or loan amount, account balance, payment history, and status; (iii) *Public Record Information*: this section typically includes public record information, such as bankruptcy filings; and (iv) *Credit Inquiries*: this section lists every entity that has accessed the consumer's file through a "hard inquiry" (i.e., consumer-initiated activities, such as applications for credit cards, to rent an apartment, to open a deposit account, or for other services) or "soft inquiry" (i.e., user-initiated inquiries like prescreening).

16. Defendants Experian, Equifax, and Trans Union gain access to consumer information from various sources, including furnishers who provide consumer information to Defendants, and information Defendants independently source themselves or through third party providers/vendors or repositories, including computerized reporting services like PACER.

17. The information reported by Defendants Experian, Equifax, and Trans Union contribute to consumer creditworthiness, including their FICO Scores, which are calculated using information contained in Defendants' consumer credit reports.

18. The majority of financial services lenders (e.g., banks, creditors, lender) rely upon credit reports, FICO Scores and other proprietary third-party algorithms – "scoring" models – to interpret the information in a credit report.

19. These algorithms use variables or "attributes" derived from the credit report to calculate a "credit score," which ultimately determines consumer creditworthiness.

20. FICO Scores factor the following: Payment history (35%); Amount of debt (30%); Length of credit history (15%); New credit (10%); and Credit mix (10%).

21. Payment history refers to whether a consumer has paid his or her bills in the past, and whether these payments have been timely, late, or missed.

22. In factoring the severity of delinquent payments, a FICO Score considers how late the payment continues to be, how much is owed, how recently this occurred, and how many delinquent accounts exist. However, once a delinquent account has been remedied the longer the account stays current the more a consumer's FICO Score should increase.

23. The more severe, recent, and frequent late payments are the greater the harm to the FICO Score.

24. The "amount of debt" a consumer owes has a major impact on their credit score. When a CRA reports a debt as outstanding when it is in fact discharged, the CRA is indicating that a consumer's "amount of debt" is higher than it actually is, which will undoubtedly impact a consumer's credit score.

25. Lenders also consider a consumer's debt-to-income ratio (DTI) based on the total amount of debt reported by Defendants in consumer credit reports. DTI compares the total amount a consumer owes to the total amount a consumer earns.

26. A consumer's income, however, is not included in their credit report; only their amount of debt is.

27. Lenders consider a consumer's DTI when deciding whether to approve financing and the credit terms thereof.

28. The higher the amount of reported debt that a consumer has, or appears to have, the worse the consumer's DTI will be, and the more difficult it will be for a consumer to obtain credit, and the credit terms will be worse (e.g., higher interest, lower credit limits).

29. Upon information and belief, a consumer who has obtained a bankruptcy discharge and has a credit report that is inaccurately reporting outstanding or past due balances after the bankruptcy discharge suffers greater harm than if that account were accurately reporting as having a zero balance.

30. Defendants Experian, Equifax, and Trans Union obtained and reported Plaintiff's consumer bankruptcy information in both the Public Records section of his consumer credit report, as well as the individuals account tradelines.

31. Information regarding whether a debt is discharged in a Chapter 13 plan is retrievable from the same sources from which Defendants voluntarily obtained the bankruptcy case information, as well as from information provided to Defendant from furnishers of account/tradeline information.

32. In this case, Plaintiff also specifically notified Defendants that the debt was discharged in his Chapter 13 bankruptcy, but Defendants rejected this specific notice, despite also possessing independent information, and otherwise having the information reasonably available from the same sources of information Defendants procured Plaintiff's bankruptcy case information. Instead, Defendants failed to verify despite notice, and followed unreasonable procedures that ignored the information Defendants possessed, ignored Plaintiff's notice, and instead blindly relied on the furnisher's own unreasonable "investigation."

33. Rather than following reasonable procedures to assure maximum possible accuracy, Defendants report information regarding pre-bankruptcy debts even if that information

ignores or contradicts information already known by Defendants, information provided by furnishers of account/tradeline information, and/or information contained in public court records that Defendants have obtained through its independent efforts, or could easily obtain through reasonably available public records.

34. Defendants are on continued notice of its inadequate post-bankruptcy reporting procedures, including inaccurate balances, and account and payment statuses, through the thousands of lawsuits and FTC and Consumer Financial Protection Bureau complaints filed against it for its inaccurate reporting following a Chapter 13 discharge.

35. On or June 28, 2016, Plaintiff filed for a voluntary bankruptcy under Chapter 13 of Title 11 of the Bankruptcy Code, in the United States Bankruptcy Court for the Northern District of Illinois, case number no. 16-20889.

36. On or about June 3, 2020, Plaintiff was discharged from his Chapter 13 bankruptcy.

37. Upon information and belief following Plaintiff's Chapter 13 Bankruptcy, Defendants prepared one or more credit reports concerning Plaintiff. Defendants reported Plaintiff's Chapter 13 Bankruptcy case information, including the case number, court, filing date, and discharge.

38. Defendants also reported Plaintiff's credit history, including names of credit accounts, account numbers, account types, responsibility for the account (i.e., individual or joint accounts), the date the accounts were opened, status, and the date of the last status update.

39. Defendants are aware that CRAs are generally required to report accounts included in a consumer's Chapter 13 bankruptcy with a status of "discharged through bankruptcy," and/or with a zero balance, unless a furnisher provides information showing that a

specific debt was excluded from the discharge.

40. Nevertheless, Defendants continued to report inaccurate consumer information on credit reports, instead of accurately reporting the status of accounts that were included in Plaintiff's Chapter 13 bankruptcy plan.

41. Following Plaintiff's bankruptcy discharge, Plaintiff obtained copies of his Experian, Equifax, and Trans Union credit reports to ensure her credit account tradelines and bankruptcy were being reported accurately.

42. Upon review, Plaintiff discovered that Defendants Experian, Equifax, and Trans Union were reporting an "open" collection account with Source Receivables Management Account ("Account") that was discharged in Plaintiff's Chapter 13 bankruptcy. .

43. Experian, Equifax, and Trans Union's reporting of the Account was inaccurate because the debt was included in Plaintiff's Chapter 13 and ultimately discharged.

44. Defendants inaccurately reported this information, e.g., that Plaintiff had an open collection account, and also reported inaccurate statuses of these accounts, thereby damaging his credit.

45. In or around January 2021, Plaintiff sent a letter to Experian, Equifax, and Trans Union disputing its inaccurate reporting of the Account.

46. The letter specifically advised that Plaintiff did not owe the balance because it was included in her bankruptcy. In addition, Plaintiff provided her bankruptcy case number.

47. Upon information and belief, Experian, Equifax, and Trans Union, forwarded Plaintiff's disputes to the furnisher, Source.

48. On or about March 18, 2021, Equifax responded to Plaintiff's dispute.

49. Experian did not correct the inaccurate information.

50. Experian did not investigate Plaintiff's dispute and, pursuant to its unreasonable procedures, merely forwarded an automated dispute form to Source, despite possessing independent information indicating these accounts were included in the Chapter 13 plan, and/or the ability to independently verify the accounts were included in the Chapter 13 plan through the same sources it receives consumer bankruptcy information. Rather than perform an investigation based on Plaintiff's dispute, reasonably available public records, and information known by Experian through Plaintiff's reported payment history regarding on the Account, Experian merely parroted information furnished by Source despite awareness that the information was factually inaccurate and conflicted with information known by Experian.

51. Source failed to conduct a reasonable investigation resulting in it continuing to furnish inaccurate data to Experian. Upon information and belief, Source failed to conduct a reasonable investigation after receiving notice of Plaintiff's dispute from Experian, Equifax and Trans Union. Source failed, among other things, to review all relevant information regarding the dispute or ignored this information. Consequently, Source continued to furnish inaccurate data to Defendants Experian, Equifax, and TransUnion despite knowledge of Plaintiff's dispute and otherwise possessing information from which Source should have reported accurate information about the Account.

52. Plaintiff did not receive a response from TransUnion or Experian.

53. On or about April 22, 2021, Plaintiff pulled her credit reports from Trans Union and Experian and both reports continued to report the Source Account with inaccurate information.

54. Trans Union and Equifax did not investigate Plaintiff's dispute and, pursuant to their unreasonable procedures, merely forwarded an automated dispute form to Source, despite

possessing independent information indicating these accounts were not included in the Chapter 13 plan, and/or the ability to independently verify the accounts were included in the Chapter 13 plan through the same sources it receives consumer bankruptcy information. Rather than perform an investigation based on Plaintiff's dispute, reasonably available public records, and information known by Trans Union and Experian through Plaintiff's reported payment history regarding on the Account, Trans Union and Equifax merely parroted information furnished by Source despite awareness that the information was factually inaccurate and conflicted with information known by Trans Union and Experian.

55. As a result of all Defendants' conduct, Plaintiff has sustained actual damages including but not limited to, embarrassment, anguish, and emotional and mental pain.

56. Defendants' conduct exacerbated Plaintiff's frustration during the already stressful post-bankruptcy period by hindering Plaintiff's ability to rebuild Plaintiff's credit.

57. Upon information and belief, had Defendants Experian, Equifax, and Trans Union accurately reported the Account as included in bankruptcy, Plaintiff's credit score would have been better.

58. Upon information and belief, Plaintiff applied for and was denied a mortgage application and credit card with US Bank due to Defendants' inaccurate reporting.

**COUNT I**
**Defendants Experian, Equifax, and Trans Union**
**(Violations of the FCRA, 15 U.S.C. § 1681 *et seq*)**

59. Plaintiff incorporates by reference all of the above paragraphs of this Complaint as though fully stated herein.

60. The FCRA requires credit reporting agencies, like Experian, Equifax, and Trans Union to "follow reasonable procedures to assure maximum possible accuracy of the information

concerning the individual about whom the report relates." 15 U.S.C. § 1681e(b).

61.     Defendants negligently and/or willfully violated 15 U.S.C. § 1681e(b) by failing to follow reasonable procedures to assure maximum possible accuracy of the information included in Plaintiff's credit file/report, and by also failing to report accurate information when placed on notice that the information Defendants are reporting is inaccurate, and/or otherwise contradicted by information known by Defendants, reported to Defendants, or reasonably available to Defendants.

62.     Defendants knew or should have known of their obligations under the FCRA, especially pertaining to discharged debts. These obligations are well established by the plain language of the FCRA, in promulgations of the Federal Trade Commission, well-established case law, and in prior cases involving Defendants from which Defendants are on notice of their unreasonable procedures concerning the reporting of debts when a consumer files for bankruptcy.

63.     Upon information and belief, Defendants Experian, Equifax, and Trans Union regularly conduct voluntary public records searches with the intention of including bankruptcy information on the credit reports it sells to other parties.

64.     Upon information and belief, Defendants Experian, Equifax, and Trans Union voluntarily conducted public records searches and obtained information about Plaintiff's bankruptcy filing.

65.     The diligence Defendants exercise in recording consumer bankruptcy filings is not replicated in Defendants' subsequent reporting of information about consumers who file bankruptcy, including, the status of accounts, and payment history for accounts that are not included by the consumer in bankruptcy.

VERIFIED COMPLAINT AND
DEMAND FOR JURY TRIAL

66. Consequently, Defendants routinely report inaccurate, incomplete, outdated, and materially misleading information about consumers like Plaintiff, without verifying the accuracy of this information, or updating this information as required by § 1681(e)(b) when Defendants possesses information inconsistent with the reported information, and possesses information establishing that the reported information is in fact inaccurate.

67. In this case, Defendants Experian, Equifax, and Trans Union inaccurately reported Plaintiff's Account as an open collection, even after Plaintiff disputed the Account.

68. The inaccurate reporting of Plaintiff's information has caused Plaintiff to suffer from stress, anxiety, headaches, frustration, and emotional and mental pain and anguish, a decreased credit score. Moreover, the inaccurate reporting has deprived Plaintiff of credit opportunities and resulted in credit denials.

69. Even after Plaintiff notified Experian, Equifax, and Trans Union of the inaccurate information it included in Plaintiff's credit file, Experian, Equifax, and Trans Union continued to inaccurately report the Account as an open collection account.

70. Defendants therefore failed to follow reasonable procedures, as 15 U.S.C. § 1681e(b) requires, by unreasonably relying on the furnishers, where, as here, Defendants possessed the information confirming that Plaintiff included the Account in the Chapter 13 plan, and/or specific notice from Plaintiff.

71. Defendants also failed to follow reasonable procedures, as 15 U.S.C. § 1681e(b) requires, by failing to verify that Plaintiff did included the Account in the Chapter 13 plan following Plaintiff's dispute, which information is reasonably available from the same sources Defendants procure consumer bankruptcy information.

//

VERIFIED COMPLAINT AND
DEMAND FOR JURY TRIAL

72. When a consumer disputes the accuracy or completion of information included in a CRA's credit file, the FCRA requires the agency to either conduct a reasonable reinvestigation into the disputed information or delete the disputed information from the consumer's credit file within thirty (30) days of receiving notice of the dispute. 15 U.S.C. § 1681i(a)(2)(A).

73. When conducting its reinvestigation of disputed information in a consumer report, the credit reporting agency is required to "review and consider all relevant information submitted by the consumer."

74. Additionally, the CRA must notify the person who furnished the disputed information of the consumer's dispute within five business days of its receipt. When notifying the furnisher of the consumer's dispute, the CRA is to "include all relevant information regarding the dispute that the agency received from the consumer." 15 U.S.C. § 1681i(a)(2)(A).

75. Thus, in addition to violating the FCRA by failing to follow reasonable procedures as 15 U.S.C. § 1681e(b) requires, Defendants additionally violated the FCRA by failing to perform a reasonable reinvestigation of the disputed Account even after Plaintiff notified Defendants of the inaccurate information reported in Plaintiff's credit file.

76. Defendants Experian, Equifax, and Trans Union's violations of 15 U.S.C. § 1681i include, but are not limited to the following:

   i. Failing to reasonably reinvestigate the inaccurate information Plaintiff disputed.

   ii. Failing to consider all relevant information while investigating Plaintiff's dispute.

   iii. Failing to include all relevant information when notifying Source of Plaintiff's dispute.

77. Instead of reasonably reinvestigating Plaintiff's dispute, Defendants Experian, Equifax, and Trans Union "verified" the tradeline was accurate and continued to report the

Account as an open collection account.

78. Defendants' acts, as described above, were done willfully and knowingly; or, alternatively were negligent.

79. Defendants' inaccurate reporting damaged Plaintiff's creditworthiness.

80. Plaintiff suffers actual damages, including a decreased credit score, loss of credit opportunities, credit denial, and other financial harm caused by Defendants inaccurately reporting a balance for a debt that was discharged in bankruptcy, and otherwise failing to report that the debt was discharged in bankruptcy.

81. Plaintiff also suffers interference with daily activities caused by other harm including, but not limited to, emotional distress, mental anguish, humiliation, stress, anger, frustration, shock, embarrassment, and anxiety.

82. Defendants are a direct and proximate cause of Plaintiff's damages.

83. Defendants are a substantial factor in Plaintiff's damages.

84. Therefore, Defendants are individually liable for actual and statutory damages, punitive damages, attorneys' fees, costs, as well as other such relief permitted by 15 U.S.C. § 1681 *et seq*.

85. As a result of the foregoing violations of the FCRA, Defendants is liable to Plaintiff for actual damages, statutory damages, attorneys' fees and costs, as described herein and as allowable by law.

### COUNT II
### Defendant Source
### (Violations of the FCRA, 15 U.S.C. § 1681s-2(b))

86. Plaintiff incorporates by reference all the above paragraphs of this Complaint as though fully stated herein.

87. The FCRA requires that furnishers of information like Source to conduct an investigation with respect to disputed information, review all relevant information, and report the results of the investigation to the credit reporting agency. If the investigation reveals the information is incomplete or inaccurate, report those results to all credit reporting agencies to which the furnisher has provided the inaccurate information.

88. Source knew or should have known about their obligations under the FCRA. These obligations are well established in the plain language of the FCRA, in the promulgations of the Federal Trade Commission, and in well-established case law. Source obtained or had available substantial written materials that apprised them of its duties under the FCRA. Despite knowing these legal obligations, Source acted consciously in breaching its known duties and deprived Plaintiff of her rights under the FCRA.

89. Plaintiff disputed the Source tradeline through national CRA Defendants Experian, Equifax, and Trans Union.

90. Thereafter, Experian, Equifax, and Trans Union forwarded Plaintiff's dispute to Source, notifying Source that Plaintiff was disputing the information it had furnished about the Account.

91. Source received notice of Plaintiff's dispute and failed to reasonably investigate or otherwise take corrective measures despite possessing all relevant knowledge regarding the dispute.

92. Source continues to furnish inaccurate information about Plaintiff to all three CRAs, even though Source possessed all relevant information about the Account and the inaccuracy that Plaintiff disputed.

//

VERIFIED COMPLAINT AND
DEMAND FOR JURY TRIAL

93. The inaccurate Account materially and adversely affects Plaintiff's credit standing.

94. On at least one occasion within the past two years, by example only and without limitations, Defendants Source violated 15 U.S.C. § 1681s-2(b)(1)(A) by failing to fully and properly investigate Plaintiff's dispute to Experian, Equifax, and Trans Union.

95. Source violated sections 15 U.S.C. §§ 1681n and 1681o of the FCRA by engaging in willful and negligent noncompliance of 15 U.S.C. § 1681s-2(a), (b), and engaging in conduct that violates 15 U.S.C. § 1681s-2(a), (b), including:

    a. Willfully and negligently failing to conduct an investigation of Plaintiff's dispute, despite possessing knowledge, information, and records to substantiate Plaintiff's dispute;

    b. Willfully and negligently failing to review all relevant information concerning Plaintiff's dispute;

    c. Willfully and negligently failing to report the results of investigations to the relevant consumer reporting agencies;

    d. Willfully and negligently failing to report to the CRAs that the disputed information is indeed inaccurate;

    e. Willfully and negligently failing to properly participate, investigate and comply with the reinvestigations that were conducted by any and all consumer reporting agencies concerning the inaccurate information disputed by Plaintiff;

    f. Willfully and negligently continuing to furnish and disseminate inaccurate credit, account and other information concerning the Plaintiff to the consumer reporting agencies despite actual knowledge of the falsity of the reported information; and

      g.      Willfully and negligently failing to comply with the requirements for furnishers of information enumerated in 15 U.S.C. § 1681s-2(b).

96.      Source unreasonably refused to take corrective measures required by the FCRA to correct and/or update Plaintiff's consumer information furnished to the national consumer reporting agencies.

97.      Source is a direct and proximate cause, as well as substantial factors in causing damage and harm to Plaintiff.

98.      Consequently, Source is liable to Plaintiff for the full amount of statutory, actual and punitive damages, as described herein and as allowable by law. Additionally, Plaintiff is entitled to Plaintiff's attorneys' fees and costs, as well as other such relief permitted by 15 U.S.C. § 1681n and § 1681o.

## **PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff Diana Cottrell respectfully requests judgment be entered against Defendants for the following:

    A.      Declaratory judgment that Defendants violated the FCRA;

    B.      Actual damages pursuant to 15 U.S.C. § 1681n(a)(1) or § 1681o(a)(1);

    C.      Statutory damages of $1,000.00 pursuant to 15 U.S.C. § 1681n(a)(1);

    D.      Punitive damages pursuant to 15 U.S.C. § 1681n(a)(2);

    E.      Costs and reasonable attorney's fees pursuant to 15 U.S.C. §§ 1681n(a)(3) and 1681o(a)(2);

    F.      Awarding Plaintiff any pre-judgment and post-judgment interest as may be allowed under the law; and

    G.      Any other relief that this Court deems appropriate.

**JURY DEMAND**

Pursuant to Federal Rule of Civil Procedure 38, Plaintiff hereby demands a trial by jury of all issues triable by jury.

Date: May 26, 2021

**CHAMI LAW, PLLC**

By: */s/Tarek N. Chami*
Tarek N. Chami – MI# P76407
22000 Michigan Ave, Suite 200
Dearborn, MI 48124
T: (313) 444-5029
tarek@pricelawgroup.com


David A. Chami (AZ No. 027585)
**PRICE LAW GROUP, APC**
8245 N. 85th Way
Scottsdale, AZ 85258
T: (818) 600-5515
david@pricelawgroup.com

*Attorneys for Plaintiff Diana Cottrell*

## VERIFICATION OF PLAINTIFF

I, Diana Cottrell, declare as follows:

1) I am a Plaintiff in the present case, a citizen of the United States of America, and a resident of the State of Illinois.

2) I have personal knowledge of myself, my activities, and my intentions, including those set out in the foregoing Verified Complaint and, if called on to testify, I would competently testify as to the matters stated herein.

3) Pursuant to 28 U.S. Code § 1746, I verify under penalty of perjury under the laws of the United States of America that the Factual allegations/statements in this Complaint concerning myself, my activities, and my intentions are true and correct, to the best of my knowledge and recollection.

Executed on May 07, 2021

_Diana Cottrell_
Diana Cottrell